[S. F. No. 13806.   In Bank.—August 31, 1931.]

FLORENCE   ELIZABETH   PALMER,   Respondent,   v.
WELLS FARGO BANK AND UNION TRUST COM-
PANY (a Corporation), Appellant.

Redman, Alexander & Bacon for Appellant.

Sullivan & Barry and Theo. J. Roche and Walter H. Linforth for Respondent.

SEAWELL, J.—This appeal was first passed upon by the District Court of Appeal, First Appellate District, Division Two, Presiding Justice Nourse writing the decision in affirmance of the trial court's judgment. ([Cal. App.] 293 Pac. 93.) A petition for hearing by this court was granted and the appeal is now before us for decision. Said District Court of Appeal affirmed the judgment upon the ground that the issue as to whether appellant had been guilty of negligence, as found by the trial court, in making delivery of the securities involved in the action to a party who embezzled the same, was one of fact and the trial court's finding thereon, by reason of conflicting evidence, could not be disturbed.

Plaintiff sued for the market value and accrued dividends of certain stocks and bonds which had been deposited with the Union Trust Company prior to its consolidation under the name it now bears. The cause was tried without a jury and judgment went for the plaintiff in the sum of $17,967.47. The appeal was taken on a bill of exceptions.

On December 1, 1916, plaintiff's mother, Nelly C. Mason, deposited with the Union Trust Company thirty-nine $1,000 bonds of the United Railroads of San Francisco, subject to the terms of a reorganization agreement. The trust company issued to her a certificate or receipt for the bonds, which provided that the interest of the depositor was assignable by transfer on the books by the holder in person or by agent upon surrender of the certificate properly indorsed. On October 31, 1917, plaintiff's mother, through her attorney-

in-fact, Theodore Gray, sold. and transferred her interest in this certificate to the plaintiff, and in 1919 said attorney-in-fact presented the assigned certificate to the trust company and made demand for delivery of the bonds. The trust company refused to make delivery when it was developed that plaintiff's mother died on February 12, 1918, the objection of the trust company being that the question might be raised as to legal delivery and also as to whether the assignment as presented by Mr. Gray, attorney-in-fact, was made after the death of his principal, who was a resident of England, for the purpose of avoiding the administration of her estate and the payment of inheritance taxes. Some time between this date and March 3, 1926, the trust company received in exchange for the thirty-nine bonds of the United Railroads other securities, as it was authorized to do under the reorganization agreement.

■ The request of Mr. Gray to make said transfer in 1919, one year after his principal's death and upon a power of attorney executed several years prior thereto, fully warranted the trust company and its attorneys in adopting precautionary measures in the circumstances of the situation, and the suggestion that the estate of Mrs. Mason be probated and plaintiff prove her claim or that proof be made in some satisfactory manner was not unreasonable. During the lifetime of Mrs. Mason, Mr. Gray had made no request for a transfer of said certificate and the trust company did not know of its existence. No move was made to take out letters of administration, and the matter remained quiescent as between the trust company and Mr. Gray, with the exception of one other request made in 1921, until November 5, 1925, a period of six years, when he delivered the original certificate issued to Nelly C. Mason by the Union Trust Company, and assigned by himself, as her attorney-in-fact, to plaintiff, Florence Elizabeth Mason Palmer, unindorsed by anyone, so it is claimed, to one James R. Ewing, Jr., with whom said Theodore Gray had bargained to reduce to possession.

Mr. Ewing, who appeared at this stage of the proceeding, was a stranger to Theodore Gray. He called upon him at his home, and made known to Mr. Gray that he had obtained knowledge of Mr. Gray's attempt to gain possession of said securities some years prior thereto from friends connected

with the Union Trust Company. He assured Mr. Gray that he had correspondents in New York City whose standing with the Equitable Trust Company of New York, which was a depositary jointly named in the reorganization agreement with the Union Trust Company, was such that they could induce the Equitable Trust Company, which in turn was able to control said Union Trust Company, to interest itself in the proposition to the end that said securities could be obtained from the Union Trust Company's possession without even an indorsement.

Mr. Gray, whose version of the transaction is as herein stated—Ewing not being produced at the trial—said he did not believe that Ewing would be able to obtain said securities from the possession of said Union Trust Company and so informed Ewing. Nevertheless he placed in his possession said certificate or receipt issued by said Union Trust Company, dated December 1, 1916, together with the transfer from Nelly C. Mason to Florence Elizabeth Mason Palmer, bearing date October 31, 1917, and executed by Theodore Gray, as attorney-in-fact of Nelly C. Mason. Beneath the date of execution and the name "Theodore Gray, attorney in fact", appears the name "Florence Elizabeth Mason Palmer". This signature is not, it is admitted on all sides, in the hand of the person it purports to be in, and was designed by the person who wrote it to deceive the officials of the Union Trust Company or some other financial institution into the belief that the name as written was the indorsement of Florence Elizabeth Mason Palmer, the owner of said securities. Mr. Gray denied that it was written by him or that it was on the assignment when he delivered the certificate to Ewing. On the other hand, the appellant offered an expert witness whose testimony tends to identify said indorsement as the handwriting of Mr. Gray, and cites as an exemplar the same name admittedly written by Gray into the body of the assignment, as evidence of the claim. It would seem that Mr. Gray at the trial acquitted Ewing of having committed the forgery. Ewing made no attempt to acquire possession of said securities and collateral through the offices of his said New York correspondents or the Equitable Trust Company of New York, but shortly after it came into his hands attempted to sell the certificate to McDonnell & Co., but failed because there was no assign-

ment of the certificate to him. A proper form of transfer was submitted to him, but Ewing said that it would be of no use because the owner of the certificate was in England. He then set about to obtain said securities from the custody of the Union Trust Company. In his plan he prepared an assignment of said certificate in type form, except his own name as transferee, which appears in his own hand. The purported transferor's name, Florence Elizabeth Mason Palmer, is signed at the proper place, but the day on which the spurious signature was written is in doubt, inasmuch as two witnesses, J. Kempson Smith and W. H. Taplin, officers of The American Bank, who had occasion to inspect the paper on which the assignment was written, on November 17, 1925, under circumstances hereafter related, were not in accord as to whether said name appeared on the assignment at the time they jointly observed it. Mr. Smith is quite sure it did not, while Mr. Taplin is of the impression that it did. The circumstances under which said assignment to Mr. Ewing came to the attention of Mr. Smith and Mr. Taplin was in the preparation by Ewing of his plan to deceive the Union Trust Company into the belief that the Ewing assignment bore the *indicia* of verity. Whether the assignment, which was typed on the upper half of the sheet of paper which it occupied, was folded so as to conceal the name of the transferor, is not certain. Be this as it may, James R. Ewing, Jr., had a business acquaintance at The American Bank, and he presented to it the paper upon which said assignment appears and upon which his name appears on the lower half, directly under and approximately a quarter of an inch below the name Florence Elizabeth Mason Palmer. He requested Mr. Smith to witness his signature and the latter complied with his request. He then suggested that it would better suit his purposes if the bank would place its stamp as a guaranty of his signature. Accordingly he was directed to Mr. Taplin, the assistant cashier of said bank, who complied with his request by impressing the stamp of the bank directly under the signature, "James R. Ewing, Jr.", in words as follows: "Signature Guaranteed. The American Bank, San Francisco. W. H. Taplin." Mr. Taplin's signature was in ink. Upon the assignment as presented to the Union Trust Company, and done no doubt for the purpose of giving the paper the

appearance of having passed scrutiny, in front of the signatures of the purported assignor, assignee and The American Bank, an X inclosed within a circle was placed. Both Mr. Smith and Mr. Taplin are positive that no such check marks appeared upon the paper at the time it came to their attention.

Immediately after the word "signature" in the line "signature guaranteed", as it appears from the impress of the bank's stamp, was inserted in ink the letter "s", making the line read "signatures guaranteed". Thus converting the word into the plural gave the appearance of the bank having guaranteed all the signatures contained on the purported document of transfer. Thus prepared, Ewing presented said certificate of deposit which was issued to Nelly C. Mason December 1, 1916, ten years prior to its presentation by Ewing. Upon the authority of said purported assignment and the guaranty of signatures thereon by The American Bank, the moneys due upon the principal of said bonds and moneys on deposit with the Union Trust Company were paid to him, and all interest past due was paid to him by the United Railroads. Ewing appropriated the entire sum which came into his hands. The bonds had been "called" in 1924, and consequently did not bear interest thereafter. Mr. Gray, as attorney-in-fact and agent of Mrs. Mason during her lifetime, and as the attorney-in-fact and agent of her daughter, Florence Elizabeth Mason Palmer, since 1917, took no reasonable steps looking to the establishment of ownership and possession of said securities. The only move made by him consisted in entering into an absurd scheme, proposed by Ewing and assented to by Gray, whereby Ewing, without the semblance of competent authority, according to Gray's own narrative of the transaction, was supposed to obtain from a trust company securities and valuable property which had been placed with it in another person's name. The conduct of Mr. Gray becomes even more surprising when it is recalled that his training as a business man and accountant was exceptional, and his business experience as a confidential adviser to a leading San Francisco firm continued through a number of years. His acquaintance with Ewing was recent and he entrusted him with valuable securities belonging to another in circumstances that should have suggested caution, seemingly without making reasonable inquiry as to his business

reputation. His conduct in the transaction, as related by himself, from first to last is culpable and indefensible measured by the most liberal standard that may be applied in a case involving trust relations or ordinary business methods. If his dereliction alone could be held sufficient to relieve appellant of its failure of duty which it owed to the owners of said securities in its trust and depositary capacity, in the circumstances of this case, there can be no doubt but that it would compel a reversal of the case, but the further fact that had the Union Trust Company made a reasonable investigation and an examination of its records as to the authority of Ewing to withdraw said securities and funds, the obvious forgeries would have been disclosed and all the parties to the transaction, including the Union Trust Company, Gray, and perhaps the owner of the stock, would have been furnished with indubitable proofs of the general dishonesty of the person offering the forged papers, presents the counterside of the question and contains the strength of respondent's case.

Much space is given in the briefs to a discussion of the transactions had between Gray and Ewing. We think much of this evidence is not relevant to the issues. That Gray's unusual acts were largely if not wholly responsible for opening the opportunity for Ewing's criminal act is plain, but that he did not intend that said Ewing should indorse any names upon the certificate or assignment than appeared upon it when delivered to him, or that it was understood that he should prepare a fictitious assignment made to himself, are facts found in his favor. Impliedly the trial court found that Gray placed the securities in the hands of Ewing with the view of enabling him to negotiate for their delivery to him. In other words, he had no criminal intent and the securities or proceeds were to be delivered to him and not to Ewing. This, though sounding somewhat weak, has some support in the evidence. The other important finding which rests upon controverted evidence, but which is conclusive upon this court, reads: "That in truth and in fact, said purported assignment of said certificate and receipt was not signed by plaintiff, or by her attorney in fact, Theodore Gray, or by anyone with her or his authority, knowledge or permission, and the indorsement in plaintiff's name at the bottom of the reverse side of said certificate or receipt like-

542

wise was not signed by plaintiff, or by said Theodore Gray, or by anyone with her or his authority, knowledge or permission.

"The court further finds that plaintiff never appointed the said James R. Ewing, Jr., as her agent to receipt and accept, or receipt or accept, from said defendant the said stock, bonds or money, or any thereof."

■ Appellant invokes the aid of section 3543 of the Civil Code, which provides that "where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer". We doubt its application to the instant case. A duty rests upon every bank and trust company to protect its depositors against forged instruments. In this case Gray was the attorney-in-fact of the owner of the securities which were subjected to forgery, but he was not the author of the forgery, nor did he aid and abet its commission. His unwise conduct made the forgery possible, but such an act could not relieve the trust company of the duty of comparing respondent's signature with her signature as written on her signature card which it had in its files for the purpose of guarding against forgeries, which are a common menace to depositors. It had no special acquaintance with Ewing, and had it used the same caution it used when the matter came to its attention in the first instance the forgery would have been frustrated. The fact that it was content to rely upon the purported guaranty of signatures by The American Bank was the assumption of a risk which it should not have assumed in view of its ready means of detecting the fraud. We think the parties were not *in pari delicto* in a legal sense.

■ Appellant complains that its examination of two witnesses, Gray, who was not a party to the action, but who was beneficially interested in the result, and respondent, a party, was unduly circumscribed by the trial court. Appellant undertook to show by these witnesses, on cross-examination of one and by calling the other as his witness, that Mrs. Mason left a large estate which had not been probated in California, and that Gray declined to follow the suggestion of the trust company for the reason that the proceeding would bring to light the fact that a large estate had escaped the payment of the income tax and also that it would put him to the test of disproving to the court that the assignment executed by

him as attorney-in-fact of the mother in favor of the daughter was in fact not executed or delivered until after the death of the mother, and if legally made it was a gift. While this testimony, although somewhat remote, may have had some bearing upon the good faith of Gray in the transaction and should have been received under the statutory provisions of section 2055 of the Code of Civil Procedure, we do not believe that it could have changed the result of the court's decision, for the reason that the court would take judicial notice of the fact that a tax was due the state on such a large amount under the inheritance tax statutes of the state as frequently construed by the courts, and for the further reason that the probative strength of the fact, if established, would not have been regarded as sufficient to overcome the positive statements of Gray as to when and the circumstances in which said assignment was made by authority of Mrs. Mason.

We are aware of the unhappy circumstances which enmesh the appellant, and by which it was lulled into a state of credulity which made it an easy prey to a rascally plot, but we see no way to relieve it at the expense of the person who entrusted it with valuable property with the understanding that it would guard it with vigilant care.

Judgment affirmed.

Preston, J., Langdon, J., Curtis, J., Shenk, J., Richards, J., and Waste, C. J., concurred.

Rehearing denied.